# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LORENZO ALVAREZ, M16839,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>) | Case No. 24-cv-2568-DWD |
| **ANTHONY WILLS,** )<br>**KEVIN REICHERT,** )<br>)<br>**Defendants.** ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Lorenzo Alvarez, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that his conditions of confinement in the segregation unit from June of 2023 through March of 2024 were constitutionally inadequate. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that from June of 2023 through March of 2024 he was housed in segregation where he was subjected to multiple inhumane conditions of confinement. He faults Warden Anthony Wills and Kevin Reichert for his conditions of confinement because he submitted emergency grievances about his conditions and they denied the grievances emergency status, and then rejected the grievances a second time when they denied any relief as the final reviewing authority in the prison's grievance process. (Doc. 1 at 10-11). Plaintiff argues that prison officials, such as the warden, may be held responsible for inadequate conditions of confinement if they participate in the grievance process and fail to investigate or remedy problems. (Doc. 1 at 13-15).

As for the conditions, Plaintiff argues that IDOC rules provide for certain amenities in restrictive housing, and that the lack of those amenities amounts to a constitutional deprivation. (Doc. 1 at 8-9). Plaintiff claims cleaning materials were not made available on a regular basis, and fresh laundry was not offered on a weekly basis. (Doc. 1 at 9). He also claims that inmates are to be allowed three opportunities to shower and shave per week, but he did not always get this opportunity. (Doc. 1 at 9). In fact, he argues he went 10 months without regular showers, and at times he went multiple weeks without a shower. (Doc. 1 at 11-12). As for exercise, he argues inmates in restrictive housing are supposed to receive a minimum of eight hours per week out of their cell. (Doc. 1 at 10). Plaintiff contends he went 300 days without the chance to exercise in or out of his cell. (Doc. 1 at 12).

He further contends mental health professionals are to visit the cellhouse at least once every seven days. (Doc. 1 at 10). Plaintiff alleges that his mental health issues were triggered when he witnessed an inmate death and subsequent riots and unrest, but he was unable to get mental health assistance for his distress. (Doc. 1 at 12). In connection with the fellow inmate's death and subsequent unrest, Plaintiff contends there were multiple environmental problems including excessive mace, floods with water that contained human waste, and fires that produced smoke. (Doc. 1 at 13). Plaintiff was forced to clean-up after these incidents without any proper cleaning materials or protection. (Doc. 1 at 13).

In support of the complaint, Plaintiff points to a few grievances, declarations from fellow inmates, and a copy of the prison's administrative code. Plaintiff also included a survey for inmates from an outside entity about the conditions at Menard that was completed by a fellow inmate—Marcellus French. The complaint itself was allegedly prepared by Mr. French, acting as a self-proclaimed "jailhouse lawyer" for Plaintiff. Mr. French contends that he has prepared the complaint for Plaintiff because Plaintiff is seriously mentally ill and could not prepare it on his own. He claims that he attached proof of this to the Complaint at exhibit 9 but exhibit 9 is merely a grievance response from the Administrative Review Board about a grievance concerning a request for mental health assistance after the riots mentioned above. (Doc. 1 at 114). Plaintiff also filed a Motion for Recruitment of Counsel (Doc. 4), but it does not contain any additional information about his mental health status other than the notation that he is "seriously mentally ill". (Doc. 4 at 2).

In one attached grievance, Plaintiff alleged that in January of 2024 he was denied showers for more than 168 hours (7 days) and had developed a rash. (Doc. 1 at 23-24). In response, grievance personnel indicated that showers were to be offered three days a week, but that showers were sometimes cancelled due to staffing shortages, or for the safety and security of the prison. (Doc. 1 at 22). The grievance was not submitted as an emergency, and the response was signed by Kevin Reichert. (Doc. 1 at 22-23). Affidavits from fellow inmates describe the lack of access to recreation and showers, as well as the floods and environmental hazards after the riots. (Doc. 1 at 28-34).

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **Eighth Amendment conditions of confinement claim against Defendants Wills and Reichert;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference to Plaintiff's mental health needs by defendants Wills and Reichert.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.** Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To the extent that Plaintiff claims his rights were violated based on the Defendants failure to ensure compliance with IDOC's own directives on the conditions to be afforded in restrictive housing, this theory falls flat because § 1983 claims cannot arise out of the failure to follow a state law or prison regulation. *See e.g., Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, prison regulations, or prison policies).

### Claim 1

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many of these conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

"Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). The Court further wrote,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burk's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. See *Durmer v. O'Carroll*, 991 F.2d 65 (3d Cir. 1993). That is equally true for an inmate complaint examiner. See *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006).
>
> []
>
> Burks contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989).

*Id.* at 595-96.

Plaintiff contends that he can overcome the supervisory liability problem for his claims against Wills and Reichert because they each were notified of the problems with his conditions of confinement via grievances, and they failed to investigate or to remedy his situation. In support of this contention, he submitted some grievance documentation,

including a grievance about a week-long deprivation of access to showers that led him to develop a rash.  He argues in his complaint that he submitted many grievances about his conditions of confinement that were reviewed and signed by Wills or Reichert.  Plaintiff is correct that the Seventh Circuit has at times allowed claims to proceed against high level supervisors who are notified of a problem via  highly detailed grievance or other correspondence.  *See e.g., Perez v. Fenoglio,* 792 F/3d 768, 781-82 (7th Cir. 2015) (prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference); *Gray v. Hardy,* 826 F.3d 1000, 1008 (7th Cir. 2016) (allowing an inmate to proceed against a warden on a conditions of confinement claim where the warden signed a grievance response about the conditions at issue).

      Although Plaintiff's claims against Wills and Reichert may not be as strong as a conditions of confinement claim against the prison officials whom he interacts with on a daily basis, and who directly supervise his conditions of confinement, his allegations are sufficient at this juncture to proceed against Wills and Reichert.  The major concerns presented by his allegations are that he spent over 300 days without any access to any sort of recreational opportunities, that he went sometimes a week or more without access to a shower (at times causing ailments like a rash), and that he was exposed to human waste and mace during inmate unrest without an adequate way to clean after the fact.

      One additional thing is worth mention.  Plaintiff did relatively little in his complaint to discuss the physical and psychological repercussions that he personally experienced as a result of the conditions he explains.  The Seventh Circuit explained in *Gray v. Hardy* that in addition to identifying harmful conditions of confinement, an

inmate must also establish some cognizable harm or a "physical injury 'that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Gray*, 826 F.3d at 1006. Plaintiff attributes a rash to the lack of showers, though he does not detail its duration or severity. He also claims he was denied all opportunity for any sort of exercise in or out of his cell for 300 days. He does not describe a specific harm associated with this issue, but the Seventh Circuit has suggested that a prolonged deprivation of all recreational activities may violate the Eighth Amendment if "the muscles are allowed to atrophy and the health of the individual is threatened." *Thomas v. Ramos*, 130 F.3d 754, 763-65 (7th Cir. 1997). The Court will read the complaint broadly in Plaintiff's favor, inferring that over the course of 300 days without exercise, Plaintiff suffered some level of physical atrophy and harm. Taken together, these assertions are sufficient to suggest that Plaintiff suffered physical and psychological harm associated with his conditions.

Plaintiff sued Wills and Reichert in their individual and official capacities, and he seeks monetary compensation as well as injunctive relief. An official capacity claim against Wills or Reichert could be a way to secure injunctive relief, but by Plaintiff's own allegations he was only housed in restrictive housing until March of 2024. Thus, any injunctive relief related to the conditions in restrictive housing is likely moot. He also seeks medical care for exposure to human waste and smoke during the riots, but he has not identified a discrete and persistent physical issue associated with these conditions, so

there is also no injunctive relief to grant in this respect. As such, it is unlikely Plaintiff will be able to secure any injunctive relief from Defendants in their official capacities.

**Claim 2**

Plaintiff alleges that he is an inmate with serious mental illness, and that his mental illness or level of distress was exacerbated after a fellow inmate's death and ensuing riots. He claims he sought mental health services for this distress (which should have been offered every week by his own account) but was unable to secure any care. An attached grievance response from the ARB suggests he grieved this issue. (Doc. 1 at 114). Although it is certainly feasible that Plaintiff could make out a deliberate indifference claim related to his mental health, he provides very little detail about this issue, who he asked for care, or how long the issue persisted. As such, this claim will be dismissed as insufficiently pled.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel. (Doc. 4). Plaintiff explains that he has only some high school education, and that he is seriously mentally ill. (Doc. 4 at 2). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff states that he attempted to recruit his own counsel, but he did not attach proof of his efforts. He also indicates that he has only some high school

education, severe mental illness, and that English is not his first language. These factors may all weigh in support of the recruitment of counsel at some point in this litigation, but right now it is still very early in the case and the next steps are very straightforward and are limited to basic issues, like the exhaustion of administrative remedies. As such, the Court finds that for now Plaintiff is capable of proceeding on his own. If Plaintiff wishes to renew his request for counsel, he must provide proof that he tried to contact at least three attorneys or entities for representation.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Wills and Reichert. By contrast, **Claim 2** is dismissed for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendants Wills and Reichert: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not

known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order.

**IT IS SO ORDERED.**

Dated: January 29, 2025

/s David W. Dugan
_____
DAVID W. DUGAN
United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.